# 22-2031

## United States Court of Appeals for the Second Circuit

RALPH HALL,

*Plaintiff-Appellant,*

v.

ANTHONY ANNUCCI, DOCCS Commissioner,
in his official and personal capacity,

*Defendants-Appellees.*

*(caption continues inside front cover)*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR APPELLEES

BARBARA D. UNDERWOOD
 *Solicitor General*
ESTER MURDUKHAYEVA
 *Deputy Solicitor General*
STEPHEN J. YANNI
 *Assistant Solicitor General*
 *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Appellees
28 Liberty Street
New York, New York 10005
(212) 416-6184

Dated: May 23, 2023

*(caption continues from front cover)*

GRIFFIN, GHCF Superintendent, in his official and personal capacity, DR. BENTIVEGNA, GHCF Medical Supervisor, in his official and personal capacity, DR. KIM, GHCF Medical Provider, in his official and personal capacity, AILEEN MCCARTHY, GHCF Hospital-Infirmary Nurse, in her official and personal capacity, NICOLE WALSH, GHCF Hospital-Infirmary Nurse, in her official and personal capacity, DONNA HEITZ, GHCF Hospital-Infirmary Nurse, in her official and personal capacity, DEBORAH MACDONALD, GHCF Hospital-Infirmary Nurse, in her official and personal capacity,

*Defendants-Appellees.*

GHCF UNKNOWN NURSING STAFF, in their official and personal capacities as Employees at Green Haven Correctional Facility between the September 26, 2017 date and October 30, 2017 and unnamed because of facility failure to disclose their identities,

*Defendant.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iii

PRELIMINARY STATEMENT ............................................................. 1

ISSUES PRESENTED .......................................................................... 2

STATEMENT OF THE CASE ............................................................... 3

    A.    Statutory and Regulatory Background ................................... 3

    B.    Factual Background .............................................................. 5

          1.    Hall's hip-replacement surgery and subsequent infection ................................................................. 5

          2.    Hall's prior and subsequent experience with the grievance process ..................................................... 6

    C.    Procedural History ............................................................... 8

          1.    The district court denies Hall's motion for default judgment against defendant Walsh ................................. 8

          2.    The district court grants summary judgment to defendants based on Hall's failure to exhaust ............... 10

STANDARD OF REVIEW .................................................................. 13

SUMMARY OF ARGUMENT .............................................................. 13

ARGUMENT ................................................................................... 15

POINT I

    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO DEFENDANTS BECAUSE HALL FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ................................................................ 15

i

**Page**

A. Hall Was Required to File a Grievance Regarding His Complaint of Deficient Medical Care. .................................... 16

B. Hall Failed to Demonstrate that the Grievance Procedure Was an Unavailable Dead End. ........................... 19

C. Hall's Contention that the Grievance Process Was Unavailable Due to Misrepresentation or Intimidation Is Abandoned and Meritless. .................................................. 20

POINT II

THE DISTRICT COURT CORRECTLY DENIED HALL'S MOTION FOR DEFAULT JUDGMENT ............................................................. 23

CONCLUSION ...................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Bell v. Napoli,*
No. 17-cv-850, 2018 WL 6506072 (N.D.N.Y. Dec. 11, 2018) ............. 19

*Booth v. Churner,*
532 U.S. 731 (2001) ................................................................ 14-15, 18

*Cho v. Song,*
166 Misc. 2d 129 (N.Y. Sup. Ct. 1995) ................................................ 26

*City of New York v. Mickalis Pawn Shop, LLC,*
645 F.3d 114 (2d Cir. 2011) .......................................................... 24-25

*Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.,*
62 F.4th 748 (2d Cir. 2023) ................................................................. 13

*Davis v. National Mortgagee Corp.,*
349 F.2d 175 (2d Cir. 1965) ................................................................. 25

*Enron Oil Corp. v. Diakuhara,*
10 F.3d 90 (2d Cir. 1993) ........................................................... 24-25, 27

*Estelle v. Gamble,*
429 U.S. 97 (1976) ................................................................................. 8

*Girard v. Chuttey,*
826 F. App'x 41 (2d Cir. 2020) ............................................................ 17

*Grafton v. Hesse,*
783 F. App'x 29 (2d Cir. 2019) ............................................................ 19

*Houghtaling v. Down,*
559 F. Supp. 3d 158 (W.D.N.Y. 2021) ................................................ 25

*Jenkins v. Haubert,*
179 F.3d 19 (2d Cir. 1999) ................................................................. 15

iii

**Cases**                                                                **Page(s)**

*LoSacco v. City of Middletown*,
   71 F.3d 88 (2d Cir. 1995) .................................................................... 20

*Lucente v. County of Suffolk*,
   980 F.3d 284 (2d Cir. 2020) ................................................................ 23

*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987) ........................................................................ 24, 26

*Porter v. Nussle*,
   534 U.S. 516 (2002) ............................................................................ 15

*Ross v. Blake*,
   578 U.S. 632 (2016) ........................................................... 13, 15-16, 19

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009) ................................................. 25

*Saeli v. Chautauqua County*,
   36 F.4th 445 (2d Cir. 2022) ........................................................... 18, 21

*Scott v. Greene*,
   No. 22-930, 2023 WL 2563896 (2d Cir. Mar. 20, 2023) ...................... 18

*Selmani v. City of New York*,
   100 A.D.3d 861 (2d Dep't 2012) ......................................................... 24

*Taylor v. New York City Dep't of Corr.*,
   849 F. App'x 5 (2d Cir. 2021) ......................................................... 19-20

*United States v. All Right, Title & Int. in Real Prop. &
   Appurtenances*,
   77 F.3d 648 (2d Cir. 1996) ................................................................. 21

*Williams v. Comstock*,
   425 F.3d 175 (2d Cir. 2005) ............................................................... 17

iv

## Laws, Regulations & Rules                                 Page(s)

*Federal*

42 U.S.C. § 1997e ............................................................. 3, 13, 15

Fed. R. Civ. P.
    4 ...................................................................................... 24
    12 .................................................................................... 10
    55 .................................................................................... 14
    56 ............................................................................. 13, 21

*New York*

C.P.L.R. 308 ...................................................................... 24

7 N.Y.C.R.R.
    § 701.1 et seq. ................................................................ 3
    § 701.2 ............................................................................ 16
    § 701.3 ............................................................................ 17
    § 701.5 .............................................................................. 4

## Miscellaneous Authority

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice
    and Procedure* (4th ed. Apr. 2023 update) (Westlaw) ................... 24-25

## PRELIMINARY STATEMENT

Plaintiff-appellant Ralph Hall, an incarcerated individual, alleges that he received inadequate medical care while recovering from hip-replacement surgery at a New York State Department of Corrections and Community Supervision facility. The U.S. District Court for the Southern District of New York (Karas, J.) granted summary judgment to defendants[1] because Hall failed to exhaust administrative remedies as required by the Prison Litigation Reform Act. The district court also denied Hall's motion for default judgment against a defendant who had yet to be served with process. This Court should affirm both rulings.

First, Hall concedes that he did not file a grievance about his surgery or subsequent infection, and he offers no valid excuse for failing to do so. The district court correctly found that Hall's complaint that he contracted an infection because medical staff failed to change his bandages was grievable, and it properly rejected Hall's contention that he failed to file a grievance because of concerns about delays in the

---

[1] Defendants-appellees are Anthony Annucci, Thomas Griffin, Dr. Robert Bentivegna, Dr. Kyoung Kim, Aileen McCarthy, Nicole Walsh, Donna Heitz, and Deborah MacDonald.

process or the unavailability of remedies. As the district court observed, Hall's arguments are squarely contradicted by Hall's extensive use of the grievance process, including the filing of several successful grievances before and after the events at issue in this case. Hall has abandoned any argument that he failed to file a grievance because of threats or misrepresentations from correction officers, and the district court properly rejected that contention as meritless in any event.

Second, the district court correctly denied Hall's motion for default judgment against defendant Nicole Walsh, who had not been served with process and thus initially did not answer the complaint. Because Walsh had not been served, she was not in default. In any event, Hall's failure to exhaust administrative remedies forecloses his claims against Walsh.

## ISSUES PRESENTED

1. Did the district court correctly grant summary judgment to defendants because Hall failed to exhaust administrative remedies?

2. Did the district court correctly deny Hall's motion for default judgment where the defendant at issue had not been served with process?

2

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

The Prison Litigation Reform Act (PLRA) requires incarcerated individuals to exhaust all available administrative remedies prior to bringing a federal suit challenging prison conditions. 42 U.S.C. § 1997e(a).

The New York State Department of Corrections and Community Supervision's (DOCCS) Inmate Grievance Program (IGP) provides an administrative mechanism for incarcerated individuals in state custody to raise grievances. The regulations governing the IGP are contained in the *Official Compilation of Codes, Rules and Regulations of the State of New York*, *see* 7 N.Y.C.R.R. § 701.1 et seq., and reproduced in DOCCS Directive No. 4040—a document made available to incarcerated individuals at all DOCCS facilities. (Defs.' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Defs.' Rule 56.1 Stmt.") ¶¶ 7-8 (Feb. 14, 2022), ECF No. 168; *see also* Decl. of Brendan M. Horan, Ex. B., Dep. Tr. ("Dep. Tr.") at 57-59 (Dec. 2, 2021), ECF No. 167-2.)

An incarcerated individual may file a grievance about the substance or application of "any written or unwritten policy, regulation, procedure, or rule of [DOCCS] or any of its program units, or the lack of a policy,

regulation, procedure or rule." (Decl. of Rachel Seguin, Ex. A, Directive No. 4040 ("Directive No. 4040") at 1 (Jan. 20, 2016), ECF No. 181-5.) The directive excludes certain issues as nongrievable, such as decisions following disciplinary proceedings, decisions of certain committees (e.g., the temporary-release and time-allowance committees), and rules and regulations of outside agencies. (*Id.* at 2-3.) The list of nongrievable issues does not include medical treatment provided at correctional facilities. (*See id.*) If an incarcerated individual "is unsure whether an issue is grievable, he or she should file a grievance and the question will be decided through the grievance process." (*Id.* at 3.)

Grievances must be filed within 21 days of an alleged occurrence. After a grievance is filed, representatives of the Inmate Grievance Review Committee have an opportunity to resolve the grievance through informal means. Otherwise, "the full committee shall conduct a hearing to answer the grievance or make a recommendation to the Superintendent." (*Id.* at 7.) The grievant may then appeal to the prison superintendent and, in turn, to the DOCCS Central Office Review Committee. (*Id.* at 9.) *See also* 7 N.Y.C.R.R. § 701.5(c)-(d).

## B.   Factual Background

### 1.   Hall's hip-replacement surgery and subsequent infection

Plaintiff Ralph Hall is an 80-year-old man incarcerated at the Green Haven Correctional Facility. (*See* Dep. Tr. at 18, 20, 22, 27.)

On September 22, 2017, Hall underwent hip-replacement surgery. (Dep. Tr. at 61.) On September 26, he returned to Green Haven, where he was admitted to the infirmary to recover. (*Id.* at 62-63.) On October 30, Hall left the infirmary and returned to the general population for about one week. (Defs.' Rule 56.1 Stmt. ¶ 4.) Upon discharge, medical staff provided Hall with extra bandages, but Hall's wound continued to leak fluid. Hall requested to see a nurse, who suspected the wound might be infected. Hall returned to the infirmary and learned on November 5 that he had contracted methicillin-resistant Staphylococcus aureus (MRSA). (*Id.* ¶¶ 3-5; Dep. Tr. at 63-65.) Afterward, Hall isolated in the infirmary for approximately 10 to 14 days to recover from the infection. (Dep. Tr. at 66.)

## 2. Hall's prior and subsequent experience with the grievance process

Hall asserts that he contracted MRSA because doctors and nurses at the infirmary failed to change his bandages. (*Id.* at 69-71.) However, it is undisputed that Hall did not file a grievance pertaining to his hip-replacement surgery or subsequent infection. (*Id.* at 71-75.) It is also undisputed that Hall had extensive experience with the grievance process—both before and after the events at issue in this case.

Hall received a handbook describing the IGP when he arrived at Green Haven in approximately 2016 or 2017 and acknowledged that he is "very familiar with the grievance program." (Dep. Tr. at 27, 29-32; Defs.' Rule 56.1 Stmt. ¶¶ 12-14.) Hall successfully utilized the grievance process at least two times prior to his hip surgery. Specifically, Hall filed a grievance in February 2017 related to a special high-protein diet he had requested. Medical staff subsequently approved the diet, which resolved Hall's concerns. (Dep. Tr. at 102-105; Defs.' Rule 56.1 Stmt. ¶ 15.) Similarly, in April 2017, Hall filed a grievance about his physical therapy services, which the IGP also resolved. (Dep. Tr. at 106-108; Defs.' Rule 56.1 Stmt. ¶¶ 17-18.)

6

Hall used the grievance process after his surgery and infection as well. In December 2017, Hall filed a grievance complaining that a correction officer had "announced that this grievant will 'die' in this prison." (*See* Decl. of Rachel Seguin, Ex. C, Grievance Appeal File ("Grievance Appeal File") at 4, ECF No. 181-3; *see also* Dep. Tr. at 47.) According to Hall, the officer told him in November 2017 "not to file any grievances against the [prison's] hospital." (Dep. Tr.at 46-47.) The officer purportedly told Hall that if he filed "more grievances against this hospital, you may not live through" and "you're going to die." (*Id.* at 47.) The grievance was denied because Hall's account could not be substantiated. (Grievance Appeal File at 1, 3.)

In subsequent years, Hall filed various other grievances, including pertaining to inmates being out of cell after hours, alleged overcharges at the commissary, and to obtain additional soap and shaving razors. (Dep. Tr. at 48-49.) In all, Hall acknowledged successfully utilizing the IGP many times since 2017. (*See id.* at 53-54.)

7

### C. Procedural History

In 2019, Hall commenced this action pro se by filing a complaint in the U.S. District Court for the Southern District of New York. He asserted claims under 42 U.S.C. § 1983 against DOCCS Commissioner Anthony Annucci, Green Haven Superintendent Thomas Griffin, and prison medical staff. Hall chiefly alleged that defendants acted with deliberate indifference to his medical needs in violation of the Eighth Amendment when they provided purportedly inadequate care following Hall's hip-replacement surgery. (Third Am. Compl. ¶ 24 (May 18, 2020), ECF No. 81.) *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

### 1. The district court denies Hall's motion for default judgment against defendant Walsh

In August 2020, defendants moved to dismiss the operative third amended complaint including for failure to exhaust administrative remedies. (ECF Nos. 103-106.) In May 2021, while the motion to dismiss was pending, Hall filed a motion for default judgment against defendant Nicole Walsh, a nurse at Green Haven, who had yet to appear or answer the complaint. (Not. & Mot. for Default J. (May 19, 2021), ECF No. 130.)

8

The New York State Office of the Attorney General (OAG) had identified Walsh as a possible defendant and provided a business address for service. (Letter from Brendan M. Horan to Judge Karas (Nov. 8, 2019), ECF No. 22.) Before service was attempted, however, defense counsel advised the court that Walsh (whom OAG did not represent at that time) could no longer be reached at the business address and instead provided Walsh's last-known home address. (Ex Parte Letter from Brendan M. Horan to Judge Karas (May 13, 2020), ECF No. 62.) Yet the U.S. Marshals Service mistakenly delivered the summons and complaint to the business address. (Process Receipt and Return of Service (Nov. 6, 2020), ECF No. 119.) Defense counsel notified the court of this error (Letter from Brendan M. Horan to Judge Karas (Dec. 17, 2020), ECF No. 121), but service was not attempted at Walsh's home address.

In response to Hall's motion for a default judgment, OAG reiterated that the summons and complaint had been delivered to the wrong address. OAG also explained that Walsh recently agreed to be represented by OAG and to waive any service defects, provided that she could join defendants' pending motion to dismiss. (Letter from Brendan M. Horan to Judge Karas (May 27, 2021), ECF No. 132.)

9

In May 2021, the district court denied Hall's motion for default judgment and granted Walsh's request to join the pending motion to dismiss. The court found that Walsh had not been served, through "no fault of her own." (Memo Endorsement at 2 (May 27, 2021), ECF No. 133.) Hall appealed the district court's interlocutory order, and this Court sua sponte dismissed the appeal for lack of jurisdiction. Order, *Hall v. Annucci*, No. 21-1492 (2d Cir. Dec. 9, 2021), CA2 ECF No. 74. Hall subsequently asked the district court to reconsider its decision, and the district court declined to do so. (*See* Memo Endorsement (June 24, 2022), ECF No. 184.)

### 2. The district court grants summary judgment to defendants based on Hall's failure to exhaust

In September 2021, the district court converted defendants' motion to dismiss for failure to exhaust administrative remedies into a motion for summary judgment and denied the motion. (Opinion & Order on Mot. to Dismiss at 21-26 (Sept. 24, 2021), ECF No. 140.) *See also* Fed. R. Civ. P. 12(d). The court explained that the medical treatment of incarcerated individuals is subject to PLRA exhaustion and that Hall's medical issue was grievable under the IGP because "medical issues are not included in the list of non-grievable issues set forth in DOCCS Directive 4040."

(Opinion & Order on Mot. to Dismiss at 24.) However, the court could not resolve without further factual development Hall's contention that this administrative remedy was unavailable to him because prison officials had deterred him from filing a grievance. (*Id.* at 25-26.) The court ordered the parties "to conduct limited discovery solely on the issue of administrative exhaustion," after which defendants could move for summary judgment. (*Id.* at 26.)

In February 2022, defendants moved for summary judgment as to Hall's failure to exhaust. (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. (Feb. 14, 2022), ECF No. 166.) In August 2022, the district court granted the motion. (Opinion & Order (Aug. 30, 2022), ECF No. 187.)

First, the district court reaffirmed its earlier ruling that the subject of Hall's complaint was grievable. The court disagreed with Hall's contention that his issue was not grievable because a correction officer told him that MRSA could not be addressed through the IGP. That allegation appeared only in a letter from Hall to the court, and Hall did not mention the statement in his deposition. In any event, Directive No. 4040 requires an individual to file a grievance if he or she "'is unsure

whether an issue is grievable.'" (*Id.* at 14-15 (quoting Defs.' Rule 56.1 Stmt. ¶ 11).)

Second, the district court rejected Hall's argument that the IGP was unavailable as a dead end. The record established that Hall had repeatedly utilized the IGP, demonstrating Hall's familiarity with the program and its availability. The court emphasized that Hall had successfully resolved several medical- and health-related issues through the IGP. In addition, the court determined that Hall could not avoid exhaustion based on his subjective concern that the process would take too long to complete. (*Id.* at 15-18.)

Third, the district court rejected Hall's argument that a correction officer's alleged threat deterred him from filing a grievance. Critically, Hall "admitted to immediately filing a grievance concerning this *exact* threat," and that grievance "omit[ed] *any* reference to his having contracted MRSA." (*Id.* at 21-22.) The court also concluded that the statement allegedly made by the correction officer was "relatively innocuous" as compared to the threats at issue in cases where exhaustion had been excused. (*Id.* at 21-23.)

12

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo and construes the evidence in the light most favorable to the nonmoving party. *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023). Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## SUMMARY OF ARGUMENT

The district court correctly granted summary judgment to defendants based on Hall's failure to exhaust administrative remedies. And it correctly denied Hall's motion for default judgment against defendant Walsh, who had not yet been served with process.

I. The PLRA required Hall to file a grievance through the available inmate grievance process prior to commencing this 42 U.S.C. § 1983 action, *see* 42 U.S.C. § 1997e(a), yet he concededly failed to do so. The narrow exception to exhaustion where administrative remedies are "unavailable" does not apply here, *see Ross v. Blake*, 578 U.S. 632, 643-44 (2016).

13

Hall is mistaken that his claim was not grievable. The alleged failure of prison employees to provide adequate medical treatment—such as Hall's claim that medical staff failed to change his bandages—falls squarely within the IGP's broad class of grievable issues. And Hall's argument that filing a grievance would not have provided his preferred remedy runs counter to Supreme Court precedent. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

There is likewise no merit to Hall's contention that the IGP operated as a dead end due to purported delays in resolving prior grievances. The record demonstrates that Hall repeatedly (and often successfully) utilized the grievance process to address various complaints. And exhaustion is not excused where an individual decides not to file a grievance based on concerns that the process may take significant time.

Finally, Hall abandons on appeal his contention that he was deterred from filing a grievance based on misrepresentations or threats. In any event, that argument is unsupported by the record and meritless.

II. The district court also correctly denied Hall's motion for default judgment against defendant Walsh. *See* Fed R. Civ. P. 55. At the time Hall filed his motion, Walsh had yet to be served with process and thus

was not in default. In any event, Hall's failure to exhaust administrative remedies forecloses his claims against Walsh as well.

## ARGUMENT

## POINT I

### THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO DEFENDANTS BECAUSE HALL FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

The PLRA requires incarcerated individuals to exhaust all available administrative remedies prior to bringing a federal lawsuit challenging conditions of confinement. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory, *Ross v. Blake*, 578 U.S. 632, 638-39 (2016), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Porter v. Nussle*, 534 U.S. 516, 532 (2002). An alleged deprivation of medical care is among the conditions of confinement subject to PLRA exhaustion. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999). And exhaustion is necessary regardless of whether the specific remedy the plaintiff seeks is available through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

15

The Supreme Court has identified three circumstances in which exhaustion may be excused. *Ross*, 578 U.S. at 643. First, an administrative procedure is unavailable when it operates as a "dead end," such as where officials are "unable or consistently unwilling to provide any relief." *Id.* Second, an administrative scheme might be so opaque or confusing that "no ordinary prisoner can discern or navigate it." *Id.* at 643-44. And third, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

As explained in more detail below, none of the exceptions to exhaustion are applicable, and the district court properly granted summary judgment to defendants.

## A. Hall Was Required to File a Grievance Regarding His Complaint of Deficient Medical Care.

Under applicable regulations, an incarcerated individual may file a grievance about the substance or application of "any written or unwritten policy, regulation, procedure or rule of [DOCCS] or any of its program units, or the lack of a policy, regulation, procedure or rule." 7 N.Y.C.R.R. § 701.2(a). (*See also* Directive No. 4040 at 1.) Deficient medical treatment

16

is not listed among the specific, nongrievable issues that fall outside the scope of the IGP. *See* 7 N.Y.C.R.R. § 701.3(e). (*See also* Directive No. 4040 at 2-3). Accordingly, this Court has consistently affirmed the dismissal of 42 U.S.C. § 1983 deliberate-indifference claims alleging deficient medical care where plaintiffs failed to exhaust DOCCS's grievance process. *See, e.g.*, *Williams v. Comstock*, 425 F.3d 175, 176-77 (2d Cir. 2005) (per curiam) (plaintiff's failure to timely file grievance foreclosed claim that nurse provided inadequate medical care); *Girard v. Chuttey*, 826 F. App'x 41, 44-45 (2d Cir. 2020) (summary order) (plaintiff failed to exhaust medical deliberate-indifference claim).

On appeal, Hall does not dispute that deficient medical care is grievable under the IGP as a general matter. To the contrary, Hall concedes that alleged violations of DOCCS policies and procedures— which are plainly grievable—form the basis of his claims. *See* Brief for Appellant (Br.) at 12. Indeed, Hall admitted in his deposition that he could have filed a grievance about the medical staff's purported failure to change his bandages while he was recovering from surgery. (Dep. Tr. at 95.) And he has previously filed several grievances related to his medical care. See *supra* at 6.

17

Instead, Hall argues that he had no reason to file a grievance because prison officials could not have cured his MRSA. *See* Br. at 5. But Hall's view that filing a grievance would not have provided his desired form of relief does not excuse him from exhausting the administrative process, *see Booth*, 532 U.S. at 732, including in cases involving purportedly irremediable medical harms. *See Scott v. Greene*, No. 22-930, 2023 WL 2563896, at *1 (2d Cir. Mar. 20, 2023) (summary order) (rejecting plaintiff's argument that exhaustion was not required because "the grievance process . . . 'could not replace [her] wrongly pulled tooth,' 'fix [her] damaged ankle,' or 'restore [her] eyesight'").[2]

---

[2] The district court correctly rejected Hall's belated argument (not raised on appeal) that his complaint was not grievable because a correction officer had told him so. (*See* Opinion & Order at 14-15.) Even if the argument had been timely raised or factually supported, but see *infra* at 20-22, grievability is a question of law to which an individual officer's subjective views are irrelevant. *See Saeli v. Chautauqua County*, 36 F.4th 445, 458 & n.8 (2d Cir. 2022). Equally meritless is Hall's abandoned assertion that his medical issue was not grievable because it fell under the purview of an outside agency. (Dep. Tr. at 95-96; *see also* Pl.'s Resp. to Defs.' First Set of Interrogs. at 2-4 (Nov. 18, 2021), ECF No. 154; Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 8 (Feb. 18, 2022), ECF No. 175.) As Hall concedes, all defendants were DOCCS employees. *See* Br. at 12.

**B.      Hall Failed to Demonstrate that the Grievance Procedure Was an Unavailable Dead End.**

The district court correctly rejected Hall's assertion that the grievance procedure was unavailable to him as a dead end. (Opinion & Order at 15.) The record squarely contradicts any notion that officials were "unable or consistently unwilling" to provide Hall relief through the IGP. *See Ross*, 578 U.S. at 643.

As the district court observed (Opinion & Order at 15), Hall repeatedly availed himself of the IGP, and many of his grievances resulted in the successful resolution of his complaints. See *supra* at 6-7. This Court has refused to excuse exhaustion in similar circumstances where the record demonstrated plaintiff's ability to successfully file grievances. *See Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir. 2019) (summary order). And contrary to Hall's contention, an individual's choice to forego the grievance process due to fear of delay does not render the process unavailable for purposes of exhaustion.[3] *See Taylor v. New*

---

[3] Hall misplaces his reliance (Br. at 4-5) on *Bell v. Napoli*, where the district court excused plaintiff's failure to exhaust because his grievance appeal was ignored and never resolved. No. 17-cv-850, 2018 WL 6506072, at *7 (N.D.N.Y. Dec. 11, 2018). Here, it is undisputed that Hall did not file a grievance concerning his MRSA infection.

*York City Dep't of Corr.*, 849 F. App'x 5, 8 (2d Cir. 2021) (summary order) (grievance process not unavailable where prison failed to respond to prior grievances).

**C. Hall's Contention that the Grievance Process Was Unavailable Due to Misrepresentation or Intimidation Is Abandoned and Meritless.**

In the district court, Hall chiefly argued that various misleading or intimidating statements from correction officers impeded his ability to file a grievance. Hall has abandoned this argument on appeal by failing to raise it in his opening brief. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92-93 (2d Cir. 1995). If the Court reaches the issue, it should affirm the district court's determination that there is no genuine dispute of fact as to whether any comment by a correction officer rendered the IGP unavailable to Hall. (*See* Opinion & Order at 23.)

First, there is no competent evidence that a correction officer told Hall that his complaint was nongrievable. In an unsworn letter submitted to the district court prior to defendants' summary judgment motion, Hall claimed that "discovery would show" that a since-retired correction officer had "advised [Hall] that contraction of MERSA [sic] was not grievable." (Letter from Ralph Hall to Judge Karas at 1 (Oct. 5, 2021), ECF No. 143.)

The letter was not submitted with Hall's opposition to defendant's summary judgment motion and can be disregarded on that ground alone. *See United States v. All Right, Title & Int. in Real Prop. & Appurtenances*, 77 F.3d 648, 657-58 (2d Cir. 1996) (party cannot submit unsworn letter in response to summary judgment motion); *see also* Fed. R. Civ. P. 56(c).

Moreover, the allegations contained in the letter are unsupported by record evidence. As the district court correctly observed, Hall did not mention this allegation in his deposition. (Opinion & Order at 14; *see also* Dep. Tr. at 109-112.) Nor does the allegation appear in Hall's December 2017 grievance reporting the same officer's alleged threat that Hall would die if he submitted a grievance. (*See* Grievance Appeal File at 4.) Hall's allegation is also at odds with his filing of numerous grievances regarding other medical issues—including his diet and physical therapy. See *supra* at 6-7. There is no plausible reason why MRSA specifically would be subject to different treatment under the IGP.[4] And even

---

[4] In light of these numerous inconsistencies, the Court need not assume the truth of Hall's (unsworn) statement. *See Saeli*, 36 F.4th at 457 (court need not assume the truth of testimony "'replete with inconsistencies and improbabilities'" (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553-55 (2d Cir. 2005)).

21

assuming the officer had made the alleged statement, applicable regulations required Hall to file a grievance if there were any uncertainty as to grievability. *See* Directive No. 4040 at 3.

Second, there is no evidence that the correction officer's alleged threat deterred Hall from filing a grievance about the MRSA infection. It is undisputed that Hall continued to file grievances after receiving the threat—including a grievance about the threat itself and about underlying health concerns. (*See* Grievance Appeal File at 4; *see also* Dep. Tr. at 47.) This sequence of events undermines any contention that the officer's alleged remarks deterred Hall from filing health-related grievances.

In any event, the district court correctly determined that the alleged statement is most naturally read as an insensitive comment about Hall's "advanced age in light of the time-intensive nature of grievances" and not as a threat to his safety. (*See* Opinion & Order at 20.) Hall's alternate recounting of the alleged comment—"if you file any more grievances against this hospital, you may not live through"—also supports this conclusion. (*See* Dep. Tr. at 47.) Moreover, Hall conceded in his deposition that the officer might have been "joking." (*Id.* at 86.) Hall thus fails to

identify "any evidence of intimidation that would have deterred a similarly situated individual of ordinary firmness from utilizing the grievance procedures." *See Lucente v. County of Suffolk*, 980 F.3d 284, 313 (2d Cir. 2020).

## POINT II

### THE DISTRICT COURT CORRECTLY DENIED HALL'S MOTION FOR DEFAULT JUDGMENT

The district court correctly denied Hall's motion for default judgment against defendant Nicole Walsh, a Green Haven nurse whom Hall alleges provided him with inadequate care. At the time of the motion, Walsh had yet to be served with the complaint and thus was not in default. In any event, the district court's correct grant of summary judgment to defendants on exhaustion grounds applies equally to foreclose Hall's claims against Walsh.[5]

Federal Rule of Civil Procedure 55 "provides a two-step process for the entry of judgment against a party who fails to defend: first, the entry

---

[5] Because Hall currently appeals the denial of his motion for default judgment, there is no basis for this Court to "reinstate" Hall's earlier interlocutory appeal that this Court dismissed for lack of appellate jurisdiction. *See* Br. at 18.

23

of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quotation marks omitted). Neither default nor default judgment may be entered before the defendant has been served with process. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (4th ed. Apr. 2023 update) (Westlaw). This principle follows from the general rule that a federal court lacks personal jurisdiction over a defendant who has not been served. *See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). As relevant here, New York law provides that a defendant may be served at his or her "actual place of business," C.P.L.R. 308(2), but that location must be where the person regularly transacts business and is "physically present with regularity," *Selmani v. City of New York*, 100 A.D.3d 861, 861 (2d Dep't 2012). *See also* Fed. R. Civ. P. 4(e)(1) (service may be completed by methods permitted under state law).

The district court's discretion to proceed under Rule 55 is carefully circumscribed in light of the "strong preference for resolving disputes on the merits" and the severe consequences that attend a default judgment. *See Mickalis Pawn Shop*, 645 F.3d at 129 (quotation marks omitted). The

24

court may decline to enter default judgment against a defaulting defendant where closely related claims involving similar defenses have yet to be resolved against answering defendants. *See* Wright & Miller, *supra*, § 2690; *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 414-15 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010). And "summary judgment in favor of the answering defendants will accrue to the benefit of the defaulting defendant." Wright & Miller, *supra*, § 2690; *see Davis v. National Mortgagee Corp.*, 349 F.2d 175, 178 (2d Cir. 1965). The district court also has broad discretion to vacate an entry of default considering (i) "whether the default was willful," (ii) any resulting prejudice to the opposing party, and (iii) "whether a meritorious defense is presented." *Enron Oil Corp.*, 10 F.3d at 96.

Here, there was no entry of default against Walsh when Hall filed his motion for default judgment. Procedurally, the district court had no authority to enter default judgment prior to the entry of default. *See Mickalis Pawn Shop*, 645 F.3d at 128 (describing two-step process); *Houghtaling v. Down*, 559 F. Supp. 3d 158, 161 (W.D.N.Y. 2021) ("Plaintiff cannot obtain a default judgment because default has not yet been entered as against Defendants.").

25

More fundamentally—even construing Hall's motion as a request for entry of default—the district court correctly observed that Walsh had not been served with the complaint through "no fault of her own." (*See* Memo Endorsement at 2, ECF No. 133.) The U.S. Marshals Service had mistakenly delivered the complaint and summons to the wrong address, even though OAG had provided a substitute address before the attempted service. See *supra* at 8-9. As Walsh later attested, she could not be reached at the correctional facility where the Marshals Service first attempted service because she had been on medical leave for almost two years and was still on leave at the time of her January 14, 2022, declaration. (*See* Decl. of Nicole Walsh ¶¶ 3-9 (Jan. 14, 2022), ECF No. 158.) Absent valid service of process, the district court lacked personal jurisdiction over Walsh and could not enter default or default judgment against her. *See Omni Capital Int'l*, 484 U.S. at 104.

Hall makes no attempt to explain how the attempted service was proper. The correctional facility at which service was attempted was not Walsh's "actual place of business" while she was on years-long medical leave. *See Cho v. Song*, 166 Misc. 2d 129, 130-34 (N.Y. Sup. Ct. 1995) (medical office was not doctor's actual place of business while he was on

26

yearlong sabbatical). But even assuming the attempted service were somehow effective, the district court would have had ample discretion not to enter default judgment here because Hall's claims were plainly foreclosed by his failure to exhaust administrative remedies. There is also no evidence of willful default, and Hall identifies no prejudice that would have arisen from excusing any default under the circumstances. *See Enron Oil Corp.*, 10 F.3d at 98.

## CONCLUSION

This Court should affirm the judgment of the district court.

Dated:  New York, New York
        May 23, 2023

                                    Respectfully submitted,

                                    LETITIA JAMES
                                      *Attorney General*
                                      *State of New York*
                                    Attorney for Appellees


                            By:   */s/ Stephen J. Yanni*
                                    STEPHEN J. YANNI
                                    Assistant Solicitor General

BARBARA D. UNDERWOOD              28 Liberty Street
  *Solicitor General*            New York, NY 10005
ESTER MURDUKHAYEVA               (212) 416-6184
  *Deputy Solicitor General*
STEPHEN J. YANNI
  *Assistant Solicitor General*
      *of Counsel*

28

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Alenette B. Jordan, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,213 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

*/s/ Alenette B. Jordan*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 23, 2023, I served or caused to be served one copy of the accompanying Brief for Appellees by United States Postal Service first class/priority mail upon the following named person(s):

Ralph Hall
Green Haven Correctional Facility
PO Box 4000
Stormville, NY 12582

_/s/    Stephen J. Yanni_